KINNARD V. UNITED REGIONAL, ET AL.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-128-CV

PAUL G. KINNARD, M.D. APPELLANT

V.

UNITED REGIONAL HEALTH CARE SYSTEM APPELLEES

AND SUMI KING, M.D.

------------

FROM THE 78TH DISTRICT COURT OF WICHITA COUNTY

------------

OPINION

------------

Introduction

Paul G. Kinnard, M.D. appeals from the trial court’s order granting a take nothing summary judgment on his defamation and tortious interference claims against United Regional Health Care System and Sumi King, M.D. (appellees). 
 We affirm. 

Background

Dr. Paul Kinnard was a medical practitioner of obstetrics and gynecology and a member of the medical staff of United Regional from 1979 through February 2000.  He retired at the age of seventy-one and voluntarily resigned his staff privileges in late February 2000.  More than two years later, he reapplied for staff privileges at United Regional, but his reapplication was denied based on his failure to demonstrate that he currently possessed the clinical competence required of medical staff members under United Regional’s medical staff bylaws.

Dr. Kinnard requested that the denial of his reapplication be reviewed by a peer review committee.  At the peer review hearing, a number of witnesses testified in support of United Regional’s adverse recommendation, including Dr. Sumi King, who was then chair of United Regional’s Obstetrics Department. During the hearing, Dr. King testified that  prior to Dr. Kinnard’s retirement, he did not have current clinical competence; that patient care would suffer if he were granted privileges at the hospital; that he did not have sufficient intellectual or judgment skills for practicing obstetrics and gynecology; and that he did not have sufficient physical or motor skills to practice safely.

Based on Dr. King’s testimony, the committee affirmed the denial of privileges to Dr. Kinnard.  An appellate review committee affirmed the denial of his privileges, and on April 28, 2003, a final, unappealable decision denying his application for privileges was issued.

Dr. Kinnard filed this lawsuit against appellees in September 2003, alleging that appellees defamed him and tortiously interfered
 with existing contracts and prospective business relationships with his patients and various insurance companies. 
 After the trial court-ordered discovery period expired, appellees filed a motion for summary judgment on the following traditional and no-evidence grounds: (1) Dr. Kinnard’s claims for defamation and tortious interference seek recovery for losses resulting from the denial of Dr. Kinnard’s staff privileges, for which he cannot recover under Texas law; (2) Dr. Kinnard’s defamation claims are barred by statutory immunity; and (3) Dr. Kinnard presented no evidence to support the malice element of defamation and tortious interference claims.  The trial court granted appellees’ motion for summary judgment without specifying the grounds for its ruling. 

Standards of Review
 

Although when both no-evidence and traditional motions for summary judgment are filed we usually address the no-evidence motion first,
(footnote: 1) here we will address the propriety of granting the traditional motion first because it is dispositive of Dr. Kinnard’s claims.  
When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor.
(footnote: 2) 
 
Evidence that favors the movant’s position will not be considered unless it is uncontradicted.
(footnote: 3) 
  

Summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.
(footnote: 4) 
 Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.
(footnote: 5)
 Where, as here, 
the trial court’s order granting summary judgment does not specify the ground or grounds relied on for its ruling, the summary judgment will be affirmed on appeal if any of the grounds stated in the motion is meritorious.
(footnote: 6) 

Immunity

Assuming without deciding that Dr. Kinnard has alleged valid claims for defamation and tortious business interference against appellees,
(footnote: 7) the claims are barred by qualified immunity.   Section 160.010 of the Texas Occupations Code states, in pertinent part:

(b) A cause of action does not accrue against a member, agent, or employee of a medical peer review committee or against a health care entity 
from any act, statement, determination or recommendation made, or act reported, without malice, in the course of medical peer review 
(emphasis supplied).

(c) A person, medical peer review committee, or health care entity that, 
without malice
, participates in the medical peer review or furnishes records, information, or assistance to a medical peer review committee or the board is immune from any civil liability arising from that act (emphasis supplied).
(footnote: 8) 

These statutory immunity provisions protect both actions or statements taken in the course of peer review and the impact or effect of those actions.
(footnote: 9) 

In this case, appellees were engaged in a credentialing process, which “inherently requires peer review.”
(footnote: 10) As a result, under section 160.010 of the code, appellees are immune from liability for any cause of action arising from such activity so long as they acted without malice.

“Malice” has been defined as “a specific intent . . . to cause substantial injury or harm to the claimant.”
(footnote: 11)  Thus, t
o affirm summary judgment, we must determine that appellees had no specific intent to cause Dr. Kinnard substantial harm by their conduct as a matter of law. 

To support their qualified immunity defense, appellees submitted affidavits from members of United Regional’s Board of Directors, the peer review committee, and the appellate review committee.  
Each affidavit states, among other things, that

no information was ever exchanged during the peer review process that was known to be false,

each participant in the peer review process believed, in good faith, that the information provided by him or her was true,

each peer review action was taken in the reasonable belief that it was in furtherance of quality health care,

each peer review action taken with regard to Dr. Kinnard was warranted by the facts known about him, after reasonable efforts to obtain such facts,

no actions were taken during the peer review process with the specific intent to harm Dr. Kinnard, and

no actions were taken during the peer review process with actual awareness of an extreme degree of risk to Dr. Kinnard or a conscious indifference with Dr. Kinnard’s welfare. 

These facts are uncontroverted and establish that appellees’ actions and determinations made during the medical peer review process were made without malice.
(footnote: 12)
 Nevertheless, Dr. Kinnard asserts a fact issue exists on the issue of malice because he presented evidence that his application was not reviewed by anyone other than Dr. King, that Dr. King admitted she had not worked with Dr. Kinnard or watched him perform surgery, and that Dr. King had never reviewed Dr. Kinnard’s patient files or spoken to any of his patients.  According to Dr. Kinnard, this evidence proves that appellees acted with malice because they did not conduct an adequate investigation and had ulterior motives for denying his privileges.  We disagree.  To controvert appellees affidavits and raise a fact question on the issue of malice, Dr. Kinnard was required to present evidence that appellees had a specific intent to cause substantial injury or harm to him.  Mere evidence that appellees did not conduct an adequate investigation and had ulterior motives is not sufficient to establish such an intent.
(footnote: 13)  

Because appellees’ affidavits conclusively prove that they acted without malice, Dr. Kinnard’s claims are barred by qualified immunity as a matter of law.

Conclusion

For the foregoing reasons, we hold that the trial court did not err by granting appellees’ traditional motion for summary judgment.  We overrule Dr. Kinnard’s issue and affirm the trial court’s judgment. 

JOHN CAYCE

CHIEF JUSTICE

PANEL A: CAYCE, C.J.;
 DAUPHINOT and MCCOY, JJ.

DELIVERED:  May 11, 2006

FOOTNOTES
1:
See Ford Motor Co. v. Ridgway, 
135 S.W.3d 598, 600 (Tex. 2004).

2:
Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
 

3:
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).

4:
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).

5:
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).

6:
Provident Life & Accident Ins. Co. v. Knott
, 128 S.W.3d 211, 216 (Tex. 2003); 
Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995); 
Harwell v. State Farm Mut. Auto. Ins. Co.,
 896 S.W.2d 170, 173 (Tex. 1995). 

7:
Under Texas law, a physician is not entitled to recover against a private hospital or its staff for denying or terminating the physician’s staff privileges.
 
Winston v. Am. Med. Int’l, Inc.
, 930 S.W.2d 945, 956 (Tex. App.—Houston [1st Dist.] 1996, writ denied); 
see also Dallas County Med. Soc’y v. Ubinas-Brache
, 68 S.W.3d 31, 42 (Tex. App.—Dallas 2001, pet. denied), 
cert. denied
, 535 U.S. 970 (2002);
 Hodges v. Arlington Neuropsychiatric Ctr., Inc.
, 628 S.W.2d 536, 538 (Tex. App.—Fort Worth 1982, writ ref’d n.r.e.); 
Charter Med. Corp. v. Miller
, 605 S.W.2d 943, 951-52 (Tex. App.—Dallas 1980, writ ref’d n.r.e.) (all recognizing that a doctor has no cause of action against a private hospital for the denial or termination of staff privileges). 
 Courts have repeatedly refused to allow claims for the loss of staff privileges labeled as a defamation, breach of contract claim, or other common law torts
.  See, e.g., Hodges
, 628 S.W.2d at 537-38 (rejecting all of doctor’s claims arising from the wrongful termination of his staff privileges); 
Charter Med. Corp.
, 605 S.W.2d at 951-52 (rejecting doctor’s claims for conspiracy, slander, libel, violation of due process, and deceptive trade practices). 
 But see
 
Poliner v. Tex. Health Sys.
, No. 3-CV-1007-P, 2003 WL 22255677, at *16-17 (N.D. Tex. Sept. 30, 2003) (mem. op.) (denying a hospital’s summary judgment motion as to a doctor’s defamation claim);
 Stephan v. Baylor Med. Ctr.
, 20 S.W.3d 880, 886-87 (Tex. App.—Dallas 2000, no pet.) (reversing a summary judgment granted in favor of a hospital on the doctor’s defamation claims).
  Although Dr. Kinnard has labeled his causes of action as defamation and tortious interference, they all appear to stem from the denial of his physician staff privileges.  However, we do not reach this question because of our holding that appellees are protected by qualified immunity. 

8:
Tex. Occ. Code Ann. § 160.010 (
Vernon Supp. 2005) (emphasis supplied).
   

9:
St. Luke’s Episcopal Hosp. v. Agbor
, 952 S.W.2d 503, 505 (Tex. 1997); 
Ubinas-Brache
, 68 S.W.3d at 40
.

10:
See 
Ubinas-Brache
, 68 S.W.3d at 40. 

11:
See Romero v. KPH Consolidation, Inc.
, 166 S.W.3d 212, 214 n.2 (Tex. 2005) 
(citing 
Tex. Civ. Prac. & Rem. Code Ann.
 § 41.001(7) (Vernon 2004-05) and the revised “malice” definition, which applies to all actions seeking recovery of “damages”). 

12:
See Roe v. Walls Regional Hosp., Inc.
, 21 S.W.3d 647, 654 (Tex. App.—Waco 2000, no pet.) (holding affidavits containing such language were sufficient, if uncontroverted, to establish that a hospital acted without malice); 
see also Maewal v. Adventist Health Sys./Sunbelt, Inc.
, 868 S.W.2d 886, 893 (Tex. App.—Fort Worth 1993, writ denied) (noting that a presumption of absence of malice in the context of medical peer review committee actions is sufficient to sustain summary judgment in the absence of contrary evidence). 

13:
See Romero
, 166 S.W.3d at 214 n.2 (stating what is required to prove malice); 
see also Poliner,
 2003 WL 22255677, at *15 (stating that evidence of inadequate investigation coupled with ulterior motives is sufficient to raise a fact issue on whether a qualified privilege exists) (citing 
Duffy v. Leading Edge Prod., Inc
., 44 F.3d 308, 315 (5th Cir. 1995)).